# UNITED STATES DISTRICT COURT

for the

Central District of California

UNITED STATES OF AMERICA,

v.

JUAN PABLO MUNOZ-HERNANDEZ,

Defendant.

Case No. 5:25mj456-Duty

FILED
CLERK, U.S. DISTRICT COURT
06/30/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: KC  DEPUTY

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.  On or about the date of June 28, 2025, in the county of San Bernardino in the Central District of California, the defendant violated:

*Code Section:*
Title 18, United States Code, 111(a)(1)

*Offense Description:*
Assault of a Federal Officer

This criminal complaint is based on these facts:

  *Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
*Complainant's signature*

Konrad O. Daniels, HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

*Judge's signature*

Date:   June 30, 2025 at 9:00 a.m.

City and state:   Riverside, California

Honorable Sheri Pym, U.S. Magistrate Judge
*Printed name and title*

AUSA: Sonah Lee (951-276-6924)

**AFFIDAVIT**

I, Konrad O. Daniels, being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint against Juan Pablo MUNOZ-HERNANDEZ ("MUNOZ") for a violation of 18 U.S.C. § 111(a)(1): Assaulting, resisting, or impeding certain officers or employees.

2. This affidavit is also made in support of a criminal complaint against Juan CIRENIO-MARCOS ("CIRENIO") for a violation of 18 U.S.C. § 111(a)(1): Assaulting, resisting, or impeding certain officers or employees.

3. The facts set forth in this affidavit are based upon my personal observations; my training and experience; and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and part only.

## II. BACKGROUND OF AGENT DANIELS

4. I am a Special Agent with Homeland Security Investigations ("HSI") and have been employed as a Special Agent since July 2009. I am currently assigned to the HSI Assistant Special Agent in Charge Office in Riverside, California.

5. I am a graduate of the Federal Law Enforcement Training Center and have received extensive training in the investigation of narcotics trafficking, financial crimes, violent offenses, and other violations of federal law. I have participated in hundreds of investigations involving Title 21 (Controlled Substances Act) and Title 18 offenses. I am also cross-designated to enforce federal narcotics laws and have collaborated extensively with the U.S. Drug Enforcement Administration, U.S. Marshals Service, and various state and local agencies.

6. Throughout my career, I have arrested numerous individuals for criminal offenses, conducted numerous interviews with witnesses, defendants, prosecutors, and defense attorneys, and participated in both covert and overt surveillance. I am familiar with the tactics used by defendants and criminal organizations to smuggle narcotics, evade detection, assault law enforcement officers, and obstruct investigations.

### III. STATEMENT OF PROBABLE CAUSE

7. Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

**A. Background**

8. On June 28, 2025, at approximately 12:31 p.m., Homeland Security Investigations was notified by Immigration and Customs Enforcement and Removal Operations ("ERO") about incidents involving MUNOZ, CIRENIO, and ERO officers at the San Bernardino County Sheriff's Department West Valley Detention

Center ("WVDC") in San Bernardino County. These incidents had occurred earlier on June 28, 2025, at around 9:30 a.m.

9. As part of a planned immigration enforcement operation, ERO officers encountered MUNOZ and CIRENIO outside the WVDC on the morning of June 28, 2025. The ERO officers involved were clearly identifiable as federal officers, wearing vests and clothing marked with "POLICE" and "ICE." As ERO officers approached MUNOZ and CIRENIO to initiate field interviews, both MUNOZ and CIRENIO fled into the lobby of the WVDC. ERO Officers spent some time looking for MUNOZ and CIRENIO inside the lobby, and eventually found them inside the men's restroom in the lobby. MUNOZ and CIRENIO were hiding in the same restroom stall.

### B.   CIRENIO Assaults ERO Officers

10. ERO officers gave CIRENIO multiple commands to exit the restroom stall. CIRENIO eventually opened the stall door. ERO Marco Perera ("Perera") instructed CIRENIO to exit the stall and informed him that he was being detained. Officer Perera instructed CIRENIO to walk over to Officer Phillip Kautzer ("Kautzer") and Officer Paola Ramos ("Ramos").

11. Officer Kautzer and Officer Ramos attempted to place CIRENIO in hand restraints, but CIRENIO charged at Officers Kautzer and Ramos and began actively resisting while the officers attempted to place him in handcuffs. CIRENIO pulled away and failed to comply with repeated verbal commands.

12. CIRENIO grabbed Officer Ramos by her tactical vest and forcefully pushed Officer Ramos aside in an apparent attempt to flee.

13. After multiple commands to stop resisting arrest were ignored, Officer Kautzer deployed his Electro-Muscular Disruption Device ("EMDD"), commonly known as a taser, on CIRENIO, in response to CIRENIO's continued active resistance, before placing CIRENIO in hand restraints.

14. CIRENIO was transported by ERO officers to a nearby hospital in Fontana, California, where he was evaluated and medically cleared with no injuries.  He declined further medical attention.  Officer Ramos sustained a minor cut to her finger.

   C.   **MUNOZ Assaults ERO Officers**

15. Officer Perera instructed MUNOZ to remain inside the stall and told him that he was being detained.

16. As Officer Perera entered the stall, MUNOZ charged at Officer Perera and began to push Officer Perera.  Officer Perera instructed MUNOZ to stop resisting, but MUNOZ ignored the instructions and applied pressure to Officer Perera's chest with his arm.  When Officer Perera attempted to remove MUNOZ's arm off his chest, MUNOZ struck Officer Perera in the face with his fist multiple times.

17. ERO Officer Kautzer returned, and Officer Perera and Officer Kautzer attempted to restrain MUNOZ, who continued to actively resist and did not comply with instructions to stop.

18. After multiple commands to stop resisting, Officer Kautzer drew his EMDD and warned MUNOZ to comply and stop

resisting arrest or the taser would be deployed. MUNOZ continued to actively resist, so Officer Kautzer deployed the taser and then placed MUNOZ in hand restraints.

19. Medical personnel from the San Bernardino County Fire Department arrived on scene and evaluated MUNOZ. He was found to be free of injury and declined further medical treatment.

20. Officer Perera suffered a fractured finger during the assault and was transported to a hospital for treatment.

## IV. CONCLUSION

21. For all of the reasons described above, there is probable cause to believe that MUNOZ and CIRENIO each committed a violation of 18 U.S.C. § 111(a)(1) (Assault on a Federal Officer).

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 30th day of June 2025.

_____
HONORABLE SHERI PYM
UNITED STATES MAGISTRATE JUDGE